STATE of Missouri, Respondent,

v.

Jeffrey Chandler BARNES, and Jeff Barnes, Inc. d/b/a Best Buy Pharmacy of Louisiana, Appellants.

No. ED 88792.

Missouri Court of Appeals, Eastern District, Division One.

Jan. 15, 2008.

Rehearing Denied Feb. 19, 2008.

Donald E. Heck, Chesterfield, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jayne T. Woods, Jefferson City, MO, for respondent.

KENNETH M. ROMINES, Judge.

### Introduction

A jury convicted each Appellant of one count of stealing by deceit, Section 570.030 RSMo.[1] and thirteen counts of making a false statement to obtain a health care payment, Section 191.905.1 RSMo. Along with the jury's recommendation of one year in jail, the trial court ordered restitution and civil penalties and made Appellants jointly and severally liable for the total amount. Appellants argue there was insufficient evidence to support the convictions, that the charges overlapped and subjected them to double jeopardy, that the trial court improperly admitted some of the State's exhibits, and that the restitution and civil penalties exceeded the statutorily allowable amounts. We affirm the convictions and remand to the trial court to recalculate the proper amount of restitution.

### Factual and Procedural Background

Appellant Jeffery Chandler Barnes ("Barnes") was at all relevant times the president and sole owner of Appellant Jeff Barnes, Inc. ("Barnes, Inc."). Barnes, Inc. is a Missouri corporation duly organized and existing according to law, and Barnes, Inc. did business as Best Buy Pharmacy of Louisiana. Best Buy Pharmacy applied for and was granted status as a Medicaid pharmacy provider by the Division of Medical Services (DMS). During 2003, Barnes served as the Pharmacist–in–Charge at Best Buy Pharmacy. Under the Board of Pharmacy regulations, this meant that he had final responsibility for all activity involving the dispensation, validity, authenticity, and accuracy of prescriptions. DMS holds both the Pharmacist–in–Charge and the owner of the property collectively responsible for the accuracy of claims submitted.

In October 2003, Clarita McGreevy, a Medicaid recipient, noticed that her quarterly benefits statement was incorrect. She saw that the statement contained a billing for the drug Regranex on 9 June 2003, which she never received. She had never used Regranex nor had a prescription for it. Ms. McGreevy brought this discrepancy to Barnes' attention, who told her he would reverse it. Ms. McGreevy also notified DMS about the incorrect billing. DMS referred the complaint to the Attorney General's office, which opened an investigation.

The investigator, Scott Hankins, spoke with both Ms. McGreevy and her physician, who confirmed that she had never received a prescription for Regranex. Mr. Hankins then examined Best Buy Pharma-

---

1. All statutory references are to RSMo. (2000) unless otherwise specified.

cy's billing history for the drug Regranex. He noticed that the drug was never billed before March 2003, but after that, billings for the drug spiked through the rest of the year. Hankins also examined the diagnosis codes for all of the patients of Best Buy Pharmacy and learned that none of the patients had medical histories indicating the need for Regranex.[2]

After discovering this, Mr. Hankins decided to expand the investigation to determine whether there were other drugs for which the billings exhibited a similar pattern. He identified four other such drugs: Dovonex, Lamisil, Maxalt, and Zyprexa ("the suspect drugs"). Mr. Hankins found that several patients who had been billed for the suspect drugs did not have medical histories indicating a need for them. Mr. Hankins subpoenaed prescription records for Best Buy Pharmacy in December 2003, and in the months following, he saw a sharp decline in billings for any of the suspect drugs.

Mr. Hankins also examined the bank account of Barnes, Inc., and he discovered that all of the money coming from billings of the suspect drugs was directly deposited into the account by Medicaid. Further, Barnes was the sole signatory on the account.

The State then filed an information against both Barnes and Barnes, Inc., containing fourteen counts against each. Count I was stealing by deceit, which included forty-five transactions of different drugs for a number of patients. Counts II through XIV were all counts of Medicaid fraud, each concerning a different patient and/or a different billing date. The jury found both Barnes and Barnes, Inc. guilty of the class C felony of stealing by deceit over $500, Section 570.030 RSMo., and guilty of thirteen counts of making false statements to Medicaid in order to receive reimbursement, Section 191.905.1 RSMo., each a class D felony.[3] The jury recommended a sentence of one year and fines to be determined by the court. The court did sentence Barnes to one year in the county jail as to Count I. For Counts II through XIV, the court ordered that both Barnes and Barnes, Inc. were liable for $49,732.84 in restitution. The court then doubled that amount and added damages of $99,465.68. As civil penalties, which are authorized by Section 191.905.11, the court ordered $5,000.00 per count per defendant for a total of $130,000.00. The court then ordered that Barnes and Barnes, Inc. would be jointly and severally liable for the full amount, or $279,198.52.

Appellants raise twelve points on appeal. We categorize them into four arguments: 1) that the evidence was insufficient to convict either Appellant of any count; 2) that Appellants were subject to double jeopardy; 3) that admission of State's graphical exhibits violated discovery rules, constituted improper evidence of other crimes, and were improperly admitted without validation by an expert; 4) that the sentences were improper.

### Sufficiency of the Evidence

#### Standard of Review

"We review the denial of a motion for a judgment of acquittal to determine whether the state adduced sufficient evidence to

2. Regranex is a skin cream used to treat diabetic pressure ulcers. Mr. Hankins found that none of the patients had this condition. He also found that there were no off-label, or alternative, uses for which doctors prescribe Regranex.

3. The statute has since been amended to make a violation of Section 191.905.1 either a class C or class B felony. Section 191.905.7, amended by Missouri House Bill No. 353, 6 February 2007.

make a submissible case." *State v. Agnew,* 214 S.W.3d 398, 400 (Mo.App. E.D.2007). "To make this determination, we view all of the evidence, and all reasonable inferences that may be drawn therefrom, in the light most favorable to the verdict, and we disregard all contrary evidence and inferences." *Id.* "We ascertain whether there was sufficient evidence from which reasonable persons could have found the defendant guilty beyond a reasonable doubt." *Id.*

## Count I

◼ The State has the burden to prove each and every element of its case beyond a reasonable doubt. *State v. Taylor,* 126 S.W.3d 2, 4 (Mo.App. E.D.2003). Barnes argues that the State did not make a submissible case as to himself nor as to the corporation, Barnes, Inc. In order to find Barnes guilty, the court instructed the jury that they had to find the following beyond a reasonable doubt:

First, that on or about January 22, 2003, through January 5, 2004, in the County of Pike, State of Missouri, the defendant Jeffrey Chandler Barnes obtained Medicaid program funds, property in the possession of the State of Missouri, and

Second, that Jeffrey Chandler Barnes did so by deceit by representing to the State of Missouri that he dispensed various prescription drugs to multiple Medicaid recipients, and

Third, that such statement was false, and

Fourth, that Jeffrey Chandler Barnes knew such statement was false, and

Fifth, that the State of Missouri relied on such statement and was thereby induced to part with such property, and

Sixth, that Jeffrey Chandler Barnes obtained such property for the purpose of withholding it from the owner permanently, and

Seventh, that the property so obtained had a combined value of at least five hundred dollars[.]

In order to find Barnes, Inc. guilty, the jury had to further find these two elements beyond a reasonable doubt:

Eighth, that Jeffrey Chandler Barnes was then a high managerial agent for the defendant Jeff Barnes, Inc. d/b/a Best Buy Pharmacy of Louisiana, and

Ninth, that Jeffrey Chandler Barnes engaged in or knowingly tolerated the conduct described in paragraphs First through Seventh within the scope of his employment and in behalf of the defendant Jeff Barnes, Inc.

Appellants claim that the evidence for each Appellant was insufficient for several reasons. First, they claim that the evidence failed to demonstrate that Barnes knowingly and personally submitted any false claim to Medicaid or that he knowingly directed or caused any employee of Barnes, Inc. to do so. Barnes bases this argument on testimony at trial from Best Buy Pharmacy employees, who testified that Barnes himself rarely called in prescriptions or submitted billings to Medicaid.

However, Dr. George Oestreich, Deputy Director of DMS, testified that Barnes' initials were on many, if not all, of the prescriptions at issue for the suspect drugs. Furthermore, as Pharmacist–in–Charge, Barnes was responsible for the validity of prescriptions regardless of who actually submitted billings for them to Medicaid. There was abundant evidence presented on the point that prescriptions for the suspect drugs were invalid because most of these patients did not suffer from any ailment the drugs could treat, nor had they ever been prescribed the drugs. Finally, there was evidence showing that after Mr. Hankins subpoenaed billing rec-

ords from the pharmacy, billings for the suspect drugs dropped dramatically. Count I consisted of forty-five allegedly false transactions, and it would be reasonable for a jury to conclude that this amounts to more than a mistake. All of this evidence leads to a reasonable inference that Barnes knew the billings were false.

Appellants additionally argue that in order to find paragraph Second of the verdict director to be true, the jury had to find that the medications for which Medicaid was fraudulently billed were not actually delivered to the patients listed on the billings. One witness, Ms. McGreevy, did testify that she did not receive the medication, but the other witnesses said they did not remember. However, due to the testimony that those patients had not been prescribed that medication before and did not have the ailments those medications treated, confirmed by doctors saying that they had not prescribed the medication for their patients; the jury could have reasonably concluded that Barnes falsely represented that he had dispensed the prescriptions to the patients.

Appellants next argue that there was no evidence supporting the conclusion that Barnes personally received the reimbursements Medicaid made to Best Buy Pharmacy. However, there was evidence that Medicaid deposited the money directly into Barnes, Inc.'s bank account, of which Barnes was the sole signatory. This supports a reasonable inference that Barnes personally received the money.

Finally, Appellants argue that the State failed to specify which Appellant committed the act of stealing, assuming that it could not be both. They argue that under Section 562.056(3), if Barnes is individually liable, then the corporation cannot be. However, Appellants misunderstand this statute. Simply because it limits instances of corporate liability, it does not make corporate liability mutually exclusive of individual liability. Barnes was individually liable under Section 570.030 for stealing by deceit. Furthermore, because he committed these acts in the scope of his employment, and because his position was that of a high managerial agent, *see* Section 562.056.3(2), his actions made the corporation guilty of stealing as well.

### Counts II–XIV

■ Appellants next argue that for each of the remaining counts, the evidence was insufficient to find both of them guilty. The court instructed the jury on each count that Barnes was guilty if the jury found beyond a reasonable doubt:

> First, that on or about [date], in the County of Pike, State of Missouri, Jeffrey Chandler Barnes represented or caused to be represented to the Missouri Department of Social Services, a health care payer, that on [date], he dispensed [drug], to [patient], a qualified Medicaid recipient, and
>
> Second, that this representation was made for the purpose of receiving a health care payment, and
>
> Third, that this representation was false, and
>
> Fourth, that this representation was material, and
>
> Fifth, that on or about that date Jeffrey Chandler Barnes was a health care provider, and
>
> Sixth, that Jeffrey Chandler Barnes acted knowingly with respect to the facts and conduct submitted in this instruction[.]

The court further instructed the jury that they could find Barnes, Inc. guilty if they found the following two elements beyond a reasonable doubt:

Seventh, that Jeffrey Chandler Barnes was then a high managerial agent for the defendant Jeff Barnes, Inc. d/b/a Best Buy Pharmacy of Louisiana, and Eighth, that Jeffrey Chandler Barnes engaged in or knowingly tolerated the conduct described in paragraphs First through Sixth within the scope of his employment and in behalf of the defendant Jeff Barns, Inc.

Appellants first argue that the State did not present enough evidence that Barnes was a health care provider under Section 191.900(7) RSMo., which defines the term as "any person delivering, or purporting to deliver, any health care, and including any employee, agent or other representative of such a person, and further including any employee, representative, or subcontractor of the state of Missouri delivering, purporting to deliver, or arranging for the delivery of any health care[.]"[4] "Health care" is defined as "any service, assistance, care, product, device or thing provided pursuant to a medical assistance program, or for which payment is requested or received, in whole or part, pursuant to a medical assistance program[.]" Section 191.900(4).

Barnes argues that there was no evidence he personally ever delivered any prescriptions, and that the closest thing to it was testimony from Dr. Oestreich[5] stating that the Board of Pharmacy regulations hold Barnes responsible for all the activities of the pharmacy as the Pharmacist–in–Charge. Barnes does not dispute that Barnes, Inc. was a health care provider under Section 191.900(7). The definition includes agents of health care providers. As stated above, Barnes certainly acted within the scope of his employment as a high managerial agent of Barnes, Inc. Thus, it was reasonable for the jury to conclude that Barnes was a health care provider.

Barnes next argues that the corporation cannot be held liable, but he bases this argument on his conclusion that he was not individually liable. Because we do not agree, and because we find sufficient evidence showing Barnes was a high managerial agent acting in the scope of his employment with the corporation, we find that there was sufficient evidence to support the findings in paragraphs Seventh and Eighth of the verdict directors for Counts II through XIV.

Finally, Barnes claims that the evidence was insufficient to convict both Appellants of Counts III, X, XII, and XIV, because those counts were based on medications prescribed to Edele Kooreman and Delores Ponce, neither of whom testified at trial.[6] However, the State points out that

---

4. Barnes's reply brief argues that the definition instruction for "health care provider" at trial did not include all of the statutory definition, and thus even if Barnes fell under the statutory definition, he did not fall under the definition given to the jury. We disagree. The instruction ended the definition after "such a person." We find Barnes falls under the first part of the definition as an agent of Barnes, Inc., a health care provider. Barnes does not allege that it was error for the court to give the definitional instruction that it gave.

5. Barnes mentions twice in his brief that Dr. Oestreich testified over objection, and Barnes argues that his testimony was "without foundation and had no legal significance." However, Barnes does not raise this as a point on appeal, and thus Dr. Oestreich's testimony can constitute evidence supporting the verdict.

6. Barnes stretches this argument to Count I, also, but since we find there was sufficient evidence for these counts, the same reasoning would apply to Count I. Furthermore, there was arguably plenty of other evidence to convict on Count I even if we found the testimony regarding these two patients to be insufficient.

both of these patients' doctors testified that the patients did not have the ailments the suspect drugs treated. The doctors further testified they never prescribed the suspect drugs to their respective patients. This was sufficient evidence for the jury to reasonably conclude that Barnes' statement that he had dispensed the suspect medications to these patients was false.

### Double Jeopardy

Here Appellants argue that by charging them with both stealing by deceit and Medicaid fraud, the State subjected them to double jeopardy. Appellants raised this argument in their pretrial motion to dismiss, but did not raise it in their motion for new trial. In order to preserve issues for appeal, parties must raise them in a motion for new trial. Rule 29.11(d). The only exceptions are claims regarding jurisdiction of the court over the offense charged, whether the indictment or information states an offense, and sufficiency of the evidence. *Id.* Double jeopardy is a personal defense, not a jurisdictional challenge. *United States v. Herzog,* 644 F.2d 713, 716 (8th Cir.1981), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981). Therefore, in order for an claim of double jeopardy to be preserved, it must be raised in a motion for new trial. Because it was not here, we can review only for plain error. Rule 30.20.

■ "Relief will be granted under the plain error rule only when the error so substantially affects the rights of the accused that a manifest injustice or miscarriage of justice inexorably results if left uncorrected." *State v. Sidebottom,* 753 S.W.2d 915, 920 (Mo. banc 1988) (internal quotations omitted). *See also State v. Mayes,* 63 S.W.3d 615, 624 (Mo. banc 2001). However, this first assumes an error affecting substantial rights occurred, and it is plain from the face of the pro-

ceedings. We do not see such an error here.

■ Appellants argue that there is overlap between Count I, stealing by deceit, and the other counts of Medicaid fraud, such that to be convicted of both violates the double jeopardy clause. The Fifth Amendment prohibition of double jeopardy protects a person from multiple punishments for the same offense. *State v. Gordon,* 948 S.W.2d 673, 675 (Mo.App. E.D. 1997). Appellants argue that Medicaid fraud is a lesser included offense to stealing by deceit, and as such they cannot be convicted of both. *See* Section 556.041(1) RSMo. However, one act may constitute two offenses so long as each offense requires proof of an additional fact which the other does not. *Gordon,* 948 S.W.2d at 675. Here, as is evident from the verdict directors laid out above, each offense does require proof of an additional fact that the other does not. Stealing requires proof of an actual appropriation of funds, whereas Medicaid fraud requires only a false statement for the purpose of receiving funds. Medicaid fraud requires that the defendant be a health care provider, whereas stealing does not. Therefore, each is a separate offense, and neither Appellant was subject to double jeopardy. The trial court committed no error, plain or otherwise, in failing to dismiss any counts as violating the prohibition against double jeopardy.

### Admission of Graphical Exhibits

The exhibits at issue here are State's Exhibits 13, and 19 through 24. Each of these exhibits was a chart prepared by the State's investigator, Mr. Hankins. To compile the charts, Mr. Hankins used information from the Medicaid database and from reports he received from Appellants during discovery. Essentially, these charts were bar graphs showing the sums

Best Buy Pharmacy billed to Medicaid for each suspect drug over a period of years. Appellants argue that these exhibits were improperly admitted for a number of reasons, including that the exhibits lacked the proper foundation by an expert, that the State violated discovery rules, and that the exhibits contained improper evidence of uncharged crimes.

## Standard of Review

We review a trial court's decision to admit evidence for abuse of discretion. *State v. Hutchison,* 957 S.W.2d 757, 763 (Mo.1997). However, the State claims here that many of these arguments were not preserved for appeal, and thus may only be reviewed for plain error. Rule 30.20. We take each of Appellants' arguments concerning the exhibits in turn, discussing preservation at the outset of each.

## Expert Foundation

■ Barnes claims that these charts contained statistical analysis that was outside the normal experience of jurors, and thus the jury needed an expert to aid in understanding the charts. *See State v. Lawhorn,* 762 S.W.2d 820, 822 (Mo. banc 1988). The State claims that this issue was not preserved for appeal. Appellants filed a motion in limine before the trial began to preclude admission of any statistical graphs into evidence. In order to preserve any issue he had with such graphs, Appellants also had to make a specific objection to the introduction of the graphs at trial. *See State v. Christian,* 184 S.W.3d 597, 605 (Mo.App. E.D.2006). Furthermore, Rule 29.11(d) requires that Appellants also raise these allegations of error in a motion for new trial in order to preserve them for appellate review.

As to Exhibit 13, Appellants did not raise any allegation of error in their motion for new trial. Thus, they have pre-

served none of their claims of error concerning the admission of that exhibit. As to Exhibits 19 through 23, Appellants objected at trial on grounds of a discovery violation only. Thus, their objection was insufficient to preserve their claim of lack of foundation. And finally, as to Exhibit 24, Appellants objected at trial and asked the court to delay its ruling until after cross-examination. Nothing in Appellants' objection went to the admissibility of that exhibit. Thus, Appellants' argument that the exhibits lacked foundation is not preserved. We see no plain error in the court's exercise of discretion that compels us to review this claim.

## Alleged Discovery Violations

Appellants next claim that they were prejudiced by these exhibits because the State did not provide them to Appellants until 8 August 2006, which was seven days before the trial began. The State first argues that as to Exhibits 13 and 24, this claim is not preserved. As stated above, in addition to Appellants' motion in limine, Appellants had to make a specific objection to the introduction of the evidence at trial. *See State v. Christian,* 184 S.W.3d 597, 605 (Mo.App. E.D.2006). When the State offered Exhibit 13 at trial, Appellants objected on grounds of lack of foundation, but not discovery. When the State offered Exhibit 24, Appellants objected and asked the court to delay its ruling until after cross-examination. Appellants did not object to the admissibility of the exhibit. Thus, the only discovery claims preserved are those relating to Exhibits 19 through 23.

■ "The basic object of the discovery process is to permit the defendant a decent opportunity to prepare in advance of trial and avoid surprise." *State v. Ervin,* 835 S.W.2d 905, 920–21 (Mo.1992). The State points out that it disclosed Mr.

Hankins as a witness as early as February of 2005. Exhibits 19 through 23 consisted of bar graphs for each suspect drug comparing the amount Best Buy Pharmacy billed Medicaid for that drug in 2003 compared to other years. Mr. Hankins' mathematical process in preparing these charts consisted of adding the charges in each year together. The information he used to do this came from Appellants themselves in response to the State's subpoena for billing records. This information could have caused no surprise to Appellants other than in its form as a bar graph. The trial court did not abuse its discretion in admitting Exhibits 19 through 23 as demonstrative evidence that would help the jury visualize Mr. Hankins' testimony as to the amounts Best Buy Pharmacy billed each year. The jury retained the task of interpreting the information to determine whether Appellants were guilty of the charged offenses.

As to Exhibits 13 and 24, we see no plain error in the court's exercise of its discretion that compels us to review Appellants' claims.

### Evidence of Uncharged Crimes

■ Finally, Appellants claim that the exhibits at issue here were inadmissible because they contained evidence of uncharged crimes. Here again, any claim concerning Exhibits 13 and 24 was not preserved for reasons stated above. Furthermore, as to Exhibits 19 through 23, Appellants objected at trial on grounds of a discovery violation only. Therefore, his claim that the exhibits impermissibly put before the jury evidence of uncharged crimes was not preserved. We may therefore review the court's actions for plain error only. We see no plain error in the court's exercise of discretion to allow these exhibits, as none of them specifically connected Appellants with uncharged misconduct. Rather, the charts were simply an overview of the pharmacy's billings.

### Sentencing

Appellants argue that the trial court imposed improper sentences for several reasons: the restitution award did not reflect the evidence, the civil penalties exceeded the statutorily allowable amounts, and the trial court had no authority to make Appellants jointly and severally liable for the full amount of the judgment The State argues that Appellants did not preserve these claims for appeal because they did not raise the claims in their response to the State's Motion for Restitution, Costs of Investigation and Prosecution, Civil Penalties and Treble Damages. Appellants argue that they did object on the basis of statutory limits during the post-trial hearing, but the transcript shows that they objected to the restitution amount only, not the civil penalties. Thus the only argument Appellants preserved is that disputing the trial court's calculation of restitution.

### Standard of Review

Generally, we will not review the discretion of the trial court in fixing sentences unless an abuse of discretion is shown by motive of partiality, prejudice or oppression, or is induced by corruption. *State v. Loewe,* 756 S.W.2d 177, 184 (Mo.App. E.D. 1988). However, when it comes to statutory interpretation, that is a question of law we review *de novo. Lindquist v. Mid Am. Orthopaedic Surgery, Inc.,* 224 S.W.3d 593, 594–95 (Mo.2007). The one error that Appellants did preserve was the issue of the amount of restitution, which depends on an interpretation of Section 191.905.10. Therefore, we consider that issue first.

### Restitution

Section 191.905.10 states, in part:
Any person convicted of a violation of this section, in addition to any fines, penalties or sentences imposed by law,

shall be required to make restitution to the federal and state governments, in an amount at least equal to that unlawfully paid to or by the person, and shall be required to reimburse the reasonable costs attributable to the investigation and prosecution pursuant to sections 191.900 to 191.910.

Appellants argue that the amount the trial court awarded in restitution was excessive because it contained amounts Medicaid lost pursuant to allegedly fraudulent transactions of which Appellants were not convicted. At the post-conviction hearing on the State's Motion for Restitution, the court based its award on State's Exhibit A (L.F. 226–27). Mr. Hankins compiled this chart, which lists each loss to Medicaid that he found. Each line item contains the amount of the loss, and the corresponding count, if any, under which that loss was charged. Appellants argue that under Section 191.905.10, the court was only authorized to order restitution for losses that corresponded to the transactions charged in Counts II through XIV. We agree.

 The provision for restitution comes only in the statute relating to Counts II through XIV, Section 191.905. Section 570.030, stealing by deceit, does not contain a provision for restitution. Therefore, if the trial court wanted to assess a fine in relation to Count I, it had to do so under the general sentencing statute for felonies, which is Section 560.011. Under Section 560.011.1(2), "[i]f the offender has gained money or property through the commission of the crime, [he may be sentenced] to

pay an amount, fixed by the court, not exceeding double the amount of the offender's gain from the commission of the crime." The statute limits the fine, however, at a maximum of $20,000.

Thus the question is whether the court had authority to include in its restitution award losses that were the result of conduct charged in Count I and of conduct that went uncharged. We find no Missouri case interpreting this section, and neither party provides any.[7] Section 191.905.10 begins with "any person convicted of a violation of this section." We interpret this to limit the subsection's application to violations of Section 191.905 only. It is for the trial court to determine the amount of restitution that is proper, but that is based on an evaluation of each party's claims as to the actual loss incurred for each violation of Section 191.905. We do not see any language authorizing the trial court to include losses incurred through violations of other statutes. Furthermore, there is no basis for including losses incurred as a result of *claimed* violations of Section 191.905 which the state did not charge, let alone prove. The statute says any person *convicted* of a violation, and therefore restitution is limited to those losses which correlate with convictions of that statute.[8]

 The record is unclear as to the total amount Medicaid lost in Counts II through XIV. Exhibit A suggests one calculation, yet another chart suggests a different figure (L.F.366). Therefore, we remand to the trial court to make the proper

---

7. In fact, the only case specifically dealing with the restitution provisions of this statute is *State v. Mann*, 23 S.W.3d 824 (Mo.App. W.D.2000), in which the Western District specifically declined to decide whether a restitution amount that exceeds the amounts underlying the guilty verdict is allowable under Section 191.905. *Id.* at 837 n. 3.

8. The State would have us allow the court to award restitution for uncharged conduct because restitution is civil in nature. Thus, the State argues, it need not prove each loss beyond a reasonable doubt, but only by a preponderance of the evidence. The State would have us ignore the first clause of subsection 10, and the fact that this is a criminal statute. We decline to do so, holding steadfast to the plain language of the statute.

calculations of restitution.[9] At that time, the trial court may also award a fine for Count I as authorized by Section 560.011.

As to Appellants' other points: whether the trial court was permitted to assess damages doubling the amount of restitution awarded along with civil penalties in the amount of $5,000 per count per defendant, and whether the trial court erred in holding Appellants jointly and severally liable for the full amount of penalties; we find these claims were not preserved. We further see no plain error in the court's application of Section 191.905.11.

### Conclusion

We hold that there was sufficient evidence from which a reasonable jury could convict each Appellant of Counts I through XIV. Appellants' protection from double jeopardy was not violated by their convictions of stealing by deceit and Medicaid fraud, because each requires proof of an additional fact that the other does not. The trial court did not abuse its discretion in admitting the State's graphical exhibits. Therefore, we affirm the convictions. However, the trial court improperly applied Section 191.905.10 in its assessment of damages, and thus we reverse the sentences and remand to the trial court for resentencing in accordance with this opinion. CONVICTIONS AFFIRMED; REMANDED TO TRIAL COURT TO CALCULATE RESTITUTION.

KATHIANNE KNAUP CRANE, P.J., and ROBERT G. DOWD, JR., J., concur.

9. We point out here what is implicit in our holding: by instructing the trial court to calculate the total loss corresponding to Counts II through XIV, we deny Appellants' point that restitution should be reduced by the amounts charged in Counts III, X, XII, and XIV. For reasons previously stated, we find those counts were supported by sufficient evidence and thus those losses should be included in the restitution award.