**STATE of Missouri, Respondent,**

v.

**Lamar M. SEARS, Appellant.**

**No. ED 92394.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 17, 2009.

Craig A. Johnston, Office of the Missouri Public Defender, Columbia, MO, for Appellant.

Chris Koster, Attorney General, Mary H. Moore, Assistant Attorney General, Jefferson City, MO, for Respondent.

KURT S. ODENWALD, Presiding Judge.

### Introduction

Lamar Sears (Defendant) appeals from his conviction following a jury trial for

attempted enticement of a child, in violation of section 566.151, RSMo Cum.Supp. 2006 [1], and first-degree trespass, in violation of section 569.140, RSMo 2000. We affirm.

*Background*

This appeal arises from events that occurred on May 18, 2008, at the home of fourteen-year-old S.F. The trial court held a jury trial on October 6, 2008, and S.F. testified to the following facts. On the afternoon of May 18, 2008, S.F. and her twelve-year-old sister (Sister) were home alone while their mother was at work. The girls went outside around 2 p.m. As S.F. was walking the dog and Sister was riding her bike across the street, Defendant approached S.F.

S.F. testified that Defendant had a lawnmower and told her that she was "cute," "hot," and had a nice body. He also told S.F. that he was in eleventh grade, though Defendant was actually twenty-two years old at the time. S.F. informed Defendant that she was a teenager and attended middle school.

According to S.F., Defendant knew her mother was not home, yet he asked to see inside her house. Defendant left his lawnmower outside and entered through the backdoor; S.F. followed. After Defendant looked at some family photos he again called S.F. "hot" and asked to see her bedroom. S.F. told him he needed to leave and when he did not, she followed him to her bedroom and turned on the lights. Once in the bedroom, Defendant turned off the lights and proceeded to hug S.F., kiss her once on the lips, touch her

hip and buttock area, and attempt to lift up her shirt. S.F. stated that Defendant told her she had a "nice butt" and "soft lips."

S.F. testified that Defendant then asked her if she had ever had sex, to which she replied, "no and I never intend to." Defendant, according to S.F., said, "my friends think it's pretty cool." After that exchange Defendant sat on S.F.'s bed and lightly grabbed her wrist to sit her down beside him. S.F. reiterated that Defendant needed to leave.

Meanwhile, S.F.'s grandmother (Grandmother) drove by the residence to check on the girls. Sister, still outside, flagged Grandmother down and told her that S.F. was inside with a stranger. Sister and Grandmother entered the home, whereupon Defendant left through the backdoor. Approximately fifteen minutes later, Defendant returned to the residence and repeatedly knocked on the door, though the girls did not answer.

A police officer subsequently contacted Defendant and interviewed him at the station. Though he initially denied any involvement, Defendant ultimately gave a written statement to police, which an officer read aloud to the jury.[2]

Defendant also testified at trial and presented a slightly different version of events from S.F. First, Defendant stated that he was not trying to have sex with S.F. By his recounting, Defendant had been cutting grass and had asked S.F. for a drink of water after she declined his request to mow her lawn. S.F., he said,

---

1. All subsequent statutory citations are to RSMo Cum.Supp.2006, unless otherwise indicated.

2. Defendant's written statement corresponded with his testimony at trial. His statement admits to telling S.F. she was cute, asking if she had sex and asking if she liked it. Defendant also wrote that he asked to see S.F.'s room and that the two kissed there. When S.F. appeared nervous, Defendant wrote that he grabbed her hand and they sat down on the bed and kissed again.

gave him permission to come inside. Defendant admitted calling S.F. "cute" but stated he wanted only to compliment her. When S.F. told Defendant that guys did not normally pay her compliments, he informed her that males want only sex. The two then talked about the movie *Juno* and when S.F. stated she did not want to have a baby, Defendant told her not to have sex. Defendant stated he desired only to give S.F. advice and that the conversation merely escalated.

By this point the two had reached S.F.'s room and Defendant testified that S.F. "turned around ... kind of came in [his] area" and they kissed. Defendant contended the situation was mutual and denied trying to remove S.F.'s shirt. He said the two were sitting on S.F.'s bed talking when Sister announced that Grandmother had arrived. Defendant left the residence.

Defendant admitted returning after the incident and stated he did so in order to explain the situation because Grandmother had talked about calling the police and because Defendant was on probation.

Based on the foregoing events, the State charged Defendant with first-degree burglary, in violation of Section 569.160, RSMo 2000, attempted enticement of a child, in violation of Section 566.151, and third-degree assault, in violation of Section 565.070, RSMo 2000. The jury convicted Defendant of attempted enticement of a child and the lesser-included offense of first-degree trespass, and acquitted him of the assault charge. The trial court sentenced Defendant as a prior and persistent offender to fifteen years and six months of imprisonment, respectively, the sentences to run concurrently.

Defendant appeals.

### Point on Appeal

In his sole point on appeal, Defendant alleges that the trial court erred in overruling his motion for judgment of acquittal at the close of the evidence.

### Standard of Review

"We review the denial of a motion for a judgment of acquittal to determine whether the state adduced sufficient evidence to make a submissible case." *State v. Barnes*, 245 S.W.3d 885, 888–89 (Mo.App. E.D.2008), *quoting State v. Agnew*, 214 S.W.3d 398, 400 (Mo.App. E.D.2007). "To make this determination, we view all of the evidence, and all reasonable inferences that may be drawn therefrom, in the light most favorable to the verdict, and we disregard all contrary evidence and inferences." *Barnes*, 245 S.W.3d at 889. "We ascertain whether there was sufficient evidence from which reasonable persons could have found the defendant guilty beyond a reasonable doubt." *Id.*

### Discussion

■ Defendant argues that the trial court erred in overruling his motion for judgment of acquittal at the close of the evidence because the evidence failed to prove beyond a reasonable doubt that Defendant suggested he and S.F. should have sex. We disagree.

The submitted verdict director for attempted enticement of a child required the State to prove the following beyond a reasonable doubt:

First, that Defendant suggested that S.F., who was less than fifteen years of age, have sex; and

Second, that such conduct was a substantial step toward the commission of the offense of enticement of a child by attempting to persuade a person less than fifteen years of age to engage in sexual conduct; and

Third, that Defendant engaged in such conduct for the purpose of enticing a child; and

Fourth, that Defendant was twenty-one years of age or older.[3]

The State must prove each and every element of its case beyond a reasonable doubt. *Barnes*, 245 S.W.3d at 889.

Defendant does not dispute that S.F. was less than fifteen or that he was more than twenty-one years of age at the time the events took place. Rather, Defendant argues that the State failed to prove beyond a reasonable doubt that his actions on May 18, 2008, amounted to a suggestion that S.F. and he have sex. Defendant admits that he discussed sex with S.F., complimented her looks, kissed her, and touched her buttocks, but argues that such acts were not a suggestion for sex.

There is little caselaw construing Section 566.151. The Legislature recently amended the statute in 2006. *See* H.B. 1698, Gen. Assem., 2d. Reg. Sess. (Mo. 2006). Like Defendant, others have challenged the sufficiency of the evidence necessary to sustain their convictions under the statute. *See, e.g., State v. Wadsworth*, 203 S.W.3d 825 (Mo.App. S.D.2006). All published caselaw thus far, however, involves defendants who have unwittingly contacted undercover police officers in internet chat room "stings." *See State v. Baxter*, 284 S.W.3d 648 (Mo.App. E.D. 2009); *State v. Ward*, 235 S.W.3d 71 (Mo.

App. S.D.2007); *Wadsworth*, 203 S.W.3d 825.

Despite the discrepancy between the nature of the acts treated in the published caselaw and the case at bar, it remains clear that Section 566.151 does not require a completed sexual contact to support a conviction. *See Wadsworth*, 203 S.W.3d at 835–36; Section 566.151.1 (stating that person commits the offense if that person persuades, solicits, coaxes, entices, or lures whether by words, actions or through communication via the Internet ... for the purpose of engaging in sexual contact).

To determine what type of conduct is prohibited by the statute, in the absence of precedential guidance, we look to the language of the statute. *State v. Power*, 281 S.W.3d 843, 846–47 (Mo.App. E.D. 2009). We use the language to determine legislative intent and we give effect to that intent. *Id.* at 847. Where the Legislature has not defined a word, we may ascertain its plain and ordinary meaning from the dictionary. *Id.*

Though the statute does not use the term "suggest," that word appears in the verdict director[4] and remains the focus of Defendant's argument: Defendant claims his actions did not amount to a suggestion that S.F. and he have sex.

A "suggestion" means "[a]n indirect presentation of an idea." BLACK'S LAW DICTIONARY 1447 (7th ed.1999). Mer-

---

3. Section 566.151.1 states that a person commits the crime of enticement of a child if that person, being twenty-one years of age or older, "persuades, solicits, coaxes, entices, or lures," by words or action, any person who is less than fifteen years of age for the purpose of engaging in sexual contact.

4. The parties apparently used the term "suggest" to mean a substantial step toward the commission of the completed offense of entic-

ing a child. Unfortunately, the record provides no information regarding the verdict director's source and it is not in the MAIs. Regardless, given the language in the verdict director, our analysis of whether there was sufficient evidence to support a finding that Defendant "suggested" that S.F. have sex equates to an analysis of whether he *attempted* to persuade, solicit, coax, entice or lure her.

riam–Webster's Online Dictionary defines the verb "to suggest" as "to mention or imply as a possibility," or, "to call to mind by thought or association."[5]

The words utilized in the statute: persuade, solicit, coax, entice, or lure, convey similar meanings. "Persuade," for example, means "[t]o induce another to do something," and "entice" means "to lure or induce." BLACK'S LAW DICTIONARY 1164, 553 (7th ed.1999). Merriam–Webster's defines "solicit" as "to make petition to," or, "to urge (as one's cause) strongly."[6] Merriam–Webster's defines "coax" as, "to influence or gently urge by caressing or flattering."[7]

We believe the record contains sufficient evidence, and reasonable inferences therefrom, from which a jury could find beyond a reasonable doubt that Defendant suggested that S.F. have sex, that his purpose in doing so was to entice her to sexual intercourse, and that Defendant's conduct was a substantial step towards enticing a child. The evidence, viewed in the light most favorable to the verdict, shows that Defendant entered S.F.'s residence, knew she was in middle school and that her Mother was not home, and asked to see her bedroom. Meanwhile, Defendant made several favorable remarks on her physical appearance. Defendant admitted that he talked to S.F., heretofore a complete stranger, about sex, and that he asked her if she liked it. Moreover, Defendant kissed S.F. alone in her bedroom with the lights off and S.F. testified that he tried to remove her shirt. Defendant left the residence only because Grandmother arrived.

The State was not required to show that Defendant explicitly asked S.F. to have sex. We believe the aforementioned evidence supports a finding beyond a reasonable doubt that Defendant suggested, or implied as a possibility, that S.F. have sex; that his conduct indirectly presented the idea of sex. Similarly, the evidence supports a finding that he attempted to persuade S.F., or attempted to induce her, to have sexual intercourse.

Defendant urges that he was only giving S.F. advice and did not suggest sex or attempt to persuade her to sexual intercourse. Defendant's argument, however, amounts merely to a plea for this Court to accept his version of the facts over S.F.'s version. We must defer to the jury's superior position to assess the credibility of witnesses and the weight and value of their testimony. *State v. Orando*, 284 S.W.3d 188, 190 (Mo.App. E.D.2009). For the reasons discussed above, the trial court did not err in overruling Defendant's motion for judgment of acquittal because a reasonable juror had sufficient evidence to find him guilty beyond a reasonable doubt. Point denied.

## Conclusion

The judgment is affirmed.

GEORGE W. DRAPER III and ROY L. RICHTER, JJ., Concur.

5. Available at http://www.merriam-webster.com/dictionary/suggest (last visited October 30, 2009).

6. Available at http://www.merriam-webster.com/dictionary/solicit (last visited October 30, 2009).

7. Available at http://www.merriam-webster.com/dictionary/coax (last visited October 30, 2009).